WYOMING, The (ADAMS v.). See Case No. 71.

WYOMING, The (NEW YORK HARBOR TUG-BOAT CO. v.). See Case No. 10,205.

WYSSMAN (SLOMAN v.). See Case No. 12,955a.

WYTHE v. COOK. See Case No. 18,118.

## Case No. 18,118.

### WYTHE v. HASKELL.
### WYTHE v. COOK.

[3 Sawy. 574.][1]

Circuit Court, D. Oregon. March 27, 1876.

DONATION ACT — TITLE OF SETTLER — PARTITION BETWEEN HUSBAND AND WIFE—PATENT TO FOLLOW CERTIFICATE—CONSTRUCTION—LOCATION OF DONATION.

1. A settler under the donation act of Oregon acquires title to his donation from the passage of the act or the date of his settlement; and the patent which issues to him upon the performance of the conditions upon which the grant was made, is only record evidence of the existence of such title, or of the facts out of which it arose.

2. Under said act the surveyor-general had authority to partition the donation of a married settler, in equal parts as to quantity, between him and his wife, at any point of the compass he might deem expedient; but his action in this particular, under section 1 of the act of July 4, 1836 (5 Stat. 107), was subject to the supervision of the commissioner of the general land office.

3. When the surveyor issued a certificate to a settler under the donation act, the commissioner of the general land office was required to issue a patent thereon and in conformity therewith, unless he found some valid objection thereto; and if said objection was found, it could not be

[2][From 9 Am. Law Reg. (N. S.) 627.]
[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

·disposed of by issuing a patent so far contrary to the certificate, but the certificate should have been returned to the local office for correction, and the patent issued upon such corrected certificate.

4. A certificate and patent thereon, issued under said act, are parts of the same transaction or procedure, and may be read together for the purpose of correcting or explaining the patent, and where there is an absolute contradiction between them, the certificate must prevail.

5. On July 28, 1853, the surveyor-general issued a certificate to William H. Willson and Chloe A., his wife, for donation 44, includi : the site of the town of Salem, assigning therein "the north half, parallel with the south line of the claim, to Chloe A. Willson, and the south half to William H. Willson," upon which certificate, on February 4. 1862, a patent was issued, giving to said William H., "the south half" of said donation, and to said Chloe A., "the north half" thereof: *Held,* that the certificate and patent, taken together, showed that the partition line of the donation was a line running south, 70 degrees 21 minutes east, and parallel with the southern boundary of the tract, and not a due east and west one.

At law.

Addison C. Gibbs, P. C. Sullivan, and Ellis Hughes, for plaintiff.

J. Quinn Thornton and Joseph N. Dolph, for defendants.

DEADY, District Judge. These actions are brought by the plaintiff [W. T. Wythe], a citizen of the state of California, to recover possession of lots 8 in block 64, and 6 in block 46, situated in the town of Salem. He alleges that he is the owner in fee simple of said lot 8, and that the defendant [Jared] Haskell, unlawfully withholds the possession of it; and, also, that he is the like owner of the undivided two-thirds of said lot 6, and that the defendant, Cook, unlawfully withholds the possession of the same. On March 11, it was stipulated by the parties that an agreed state of facts theretofore filed should stand as the special verdict of a jury in each case, and that the court should give such judgment thereon as the law of the cases requires.

By these special verdicts it is substantially found that on July 28, 1853, there was issued by John B. Preston, the surveyor-general of Oregon. a certificate numbered 20, under the donation act of September 27, 1850, from which it appears that William H. Willson claimed a donation under said act, numbered 44, of a tract of public land, containing 615.02 acres, known and designated on the surveys and plats of the United States and particularly bounded and described as in said certificate specified: "The north half parallel with the south line of the claim, to Chloe A. Willson, wife of said William H. Willson, and the south half to William H. Willson." That said William H. had proved "to the satisfaction of the surveyor-general," that his settlement on such land was commenced in November, 1844, and he had resided upon and cultivated the same as required by section 4 of said act; and that

said facts and the evidence thereof were thereby certified to the commissioner of the general land office, "in order that a patent may be issued to said claimant for said tract of land, as required by the seventh section of the act aforesaid; provided, the said commissioner shall find no valid objection thereto."

That afterwards, on February 4, 1862, a patent was issued upon said certificate which recites substantially, that said certificate "has been deposited in the general land office," and that it appears therefrom "that the claim of William H. Willson, and his wife, Chloe A. Willson, * * * has been established to a donation of 640 acres of land, and that the same had been surveyed and designated as claim No. 44," being parts of certain sections and bounded and described as stated in said certificate, containing 615.-02 acres; and then declares that the "United States, in consideration of the premises and in conformity with the provisions of the act aforesaid, have given and granted, and by these presents do give and grant unto the said William H. Willson the south half, and to his wife, Chloe A. Willson, the north half of the tract of land above described; to have and to hold the said tract with the appurtenances unto the said William H. Willson, and his wife, Chloe A. Willson, and to their heirs and assigns forever, the respective portions as aforesaid."

That the premises in controversy are within the limits of the town of Salem, and the exterior lines of said donation claim; that said claim is in compact form, as appears from a plat made a part of the verdict, but none of its exterior lines run with the cardinal points of the compass; that the southern boundary runs south 70 degrees 21 minutes east, while none of the other three sides of the claim are bounded by continuous straight lines; that at and before the issuing of said certificate said surveyor-general duly designated the portions of said donation accruing to the husband and the wife as therein mentioned; and that thereafter the said Willson and wife, during their lives,—the former having died in 1856 and the latter in 1874,—treated said designation and partition as the true one. That as to the premises in controversy, the plaintiff is the successor in interest of said Chloe A., and the defendants of said William H., and that the same are situated to the south of the dividing line described in the certificate, but to the north of a line running due east and west, and dividing the donation in two equal parts.

Upon these findings the question arises, which is the lawful line between the husband's and wife's share of the donation, a line running due east and west, or one running parallel with the southern boundary of the claim? If a due east and west line is the correct one. the premises are upon the wife's part, and the plaintiff is entitled to re-

cover the possession; but, in the other case, they are upon the husband's half, and the defendants are rightfully in possession. On behalf of the plaintiff it is argued that the action of the surveyor-general in dividing the donation between the husband and wife was subject to the supervision and control of the commissioner of the general land office; and that the designation in the patent of the husband's and wife's part was an exercise of that supervisory power, and the final action and judgment of the highest authority over the subject, and therefore so far as the patent differs from the certificate in this respect, the latter is superseded and set aside.

The defendants maintain that the action of the surveyor-general in making the division between the husband and the wife is not subject to review, and, therefore, so far as the patent differs from the certificate in this respect it is void; and also, that the patent and certificate are parts of the same transaction, the former being based upon and referring to the latter, and therefore they must be read together.

Section 4 of the donation act, of September 27, 1850 [9 Stat. 497], under which this donation was obtained, gave, by words of present grant, to a settler on the public lands in Oregon, before December 1, 1850, who had resided upon and cultivated the same for four successive years, if a married man, six hundred and forty acres thereof, one-half to himself, the other half to his wife, to be held by her in her own right, and provided that the "surveyor-general shall designate the part inuring to the husband and that to the wife, and enter the same upon the records of his office." The act also provided (sections 6 and 7), that the settler should give notice of the precise tract claimed by him, and make proof of compliance with the act before the surveyor-general, who should thereupon issue a certificate, setting forth the facts in the case, and return the proof so taken to the commissioner of the general land office, when, if he "find no valid objection thereto, a patent shall issue for the land according to the certificate." Section 15 declares that "all questions arising under the act shall be adjudged by the surveyor-general, as preliminary to a final decision according to law."

The title of a settler under the donation act vested in him upon the passage of the act or the making of his settlement, if the former was prior to the latter, subject to the performance of the conditions upon which the grant was made. Chapman v. School Dist. [Case No. 2,607]; Fields v. Squires [Id. 4,776]; Lamb v. Starr [Id. 8,022]; Lamb v. Davenport [Id. 8,015]; Mizner v. Vaughn [Id. 9,678]; Adams v. Burke [Id. 49].

The patent did not pass the title to Willson and wife, but is only record evidence of the existence of their title, and the facts out of which it arose. The words of release and transfer contained in the patent are part of

an established formula, and are only intended to operate in cases where the government has some interest in the premises. They could be of no effect in this case, because the instrument shows upon its face that the title of the government was before vested in Willson and wife under the donation act. Therefore the patent is in law only a record of the previously existing rights of their donees. Langdeau v. Hanes, 21 Wall. [88 U. S.] 529.

Until the partition was made, the husband and wife were tenants in common of the whole donation. The power to make this partition was vested by the act in the surveyor-general, without qualification, and the parties had no control over it. It follows that he might divide it, so that an equal number of acres was assigned to each, by a line running to any point of the compass or parallel to any exterior line of the claim. But I think his action in this particular was subject to review. It is not declared in the act to be final; and by the act of July 4, 1836 (5 Stat. 107), re-organizing the general land office, "all the executive duties," then or afterwards prescribed, by any law, touching the disposition of the public lands or any private claim thereto, were made subject to the supervision and control of the commissioner of said office. The making of this partition was such a duty, and the action of the surveyor-general in discharging it was subject to the supervision and control of the commissioner. If he exceeded his power or abused his discretion, it would be the duty of the commissioner to interfere and correct his action. Barnard's Heirs v. Ashley's Heirs, 18 How. [59 U. S.] 44; Castro v. Hendricks, 23 How. [64 U. S.] 443; Leroy v. Jamison [Case No. 8,271].

Besides, section 13 of the act, as above quoted, having declared that the decisions of questions arising under the act by the surveyor-general should be only preliminary, and section 7 having provided in effect that patents should not issue according to the certificates of the surveyor-general, when it appeared to the commissioner that there was any valid objection thereto, both go to show that it was the intention of congress to subject the action of the former to the supervision and control of the latter, particularly in the allowing of certificates for donations, which, in the case of married persons, practically included the partition thereof. Although the language in the certificate and patent, describing or indicating the partition is not the same, they are not necessarily contradictory, and therefore it does not follow that it was intended to correct or change the former by means of the latter. For, if the commissioner had found an objection to the certificate upon this point, instead of undertaking to correct or change it directly, he would, as the practice is understood to have been, returned it to the surveyor-general, with directions to change the partition; as,

for instance, to make it by an east and west line instead of one parallel to the southern boundary of the claim, and then have issued a patent upon such corrected certificate. Indeed, it is very questionable whether the commissioner was authorized to alter or modify the effect of a certificate as to the partition or otherwise, by means of the patent or in any way, except by returning the certificate to the local office and directing the desired alteration to be made in it. The commissioner had no power to issue a patent except in pursuance of law, and in this case the act expressly provides that "patents shall issue for the land according to the certificate aforesaid;" that is, in conformity with a certificate to which he had found no valid objection. The act does not contemplate that there shall be any difference in the scope and operation of the certificate and the patent, but that the latter is based upon and conforms to the former.

In the case at bar, taking the patent and applying it to the plat or survey of the donation—which was also a part of the facts or proceedings upon which the patent is founded, and with which it was required to conform—the question arises at once whether it was intended to divide the donation by a due east and west line or a line parallel to its exterior north and south lines.

The southern and northern boundaries not being parallel and the southern one being the only one that is a continuous straight line, the most reasonable, if not the necessary conclusion is, that if the donation is to be divided by a line parallel to any of its exterior boundaries, it must be the southern one. This line runs so near east and west that a partition upon a line parallel to it, might be said to give the north half to one party and the south half to the other. In addition to this the proposition is plausible, that a grant of the north or south half of a tract of land, lying in a compact form and bounded on one side—the south side—by a continuous straight line, running within nineteen degrees and thirty-nine minutes of a due east and west course, ought in the absence of anything showing a contrary intent, to be understood and construed as applying to the half lying to the north or south of a line parallel with such south boundary. But it must be admitted that according to the primary and natural sense of the terms used in the patent describing the division of the land the partition line is a due east and west one. The expression—the north half of a tract of land—would ordinarily be understood as the moiety which lies to the north of a due east and west line, and the south half, is the remainder or what lies to the south of that line. This proposition is self-evident and cannot be made plainer by argument. But if the description in the patent of the two halves of the claim be read in conjunction with that in the certificate, the uncertainty in the patent is dispelled, and it becomes apparent that the donation was divided by a line running parallel to the southern boundary of the tract.

The plaintiff insists that this cannot be done because the patent does not refer to the certificate in this particular, and for the reason, that all which preceded the patent is merged in it, and cannot now be used to control or affect it. The defendants insist that the patent refers to the certificate and thereby adopts it, and therefore the two must be read together. As has been stated, the patent mentions the certificate and purports in a general way to be issued upon it. Not only this, but it substantially recites it, except as to the division of the claim. Upon this point it is silent. Neither does it otherwise specially adopt or refer to the certificate.

True the grant in the patent of the south and north half of the donation to Willson and wife, respectively, purports to be made "in consideration of the premises," but the "premises" are the preamble to the patent, which does not specially refer to the certificate, or recite that portion of it which designates the part inuring to the husband and the wife. The rule of law relied upon by the defendants, which declares that where a deed refers to a description of the premises contained in another writing, such description is thereby made a part of the deed, is admitted. Allen v. Bates, 6 Pick. 460; Foss v. Crisp, 20 Pick. 121. But it does not appear that there is any safe ground upon which to rest a conclusion, that this patent refers to the description or designation of the partition given in the certificate.

But I do not think it necessary that the patent should specially refer to or adopt the description in the certificate, to make it a part of it. The former is based upon the latter, and must conform to it. If it is uncertain or insufficient in its descriptive clause, reference may be made to the certificate. They are parts of one transaction or procedure, successive but dependent and related steps in the progress of ascertaining and making an official record of a pre-existing fact or matter, to wit: the settlement, residence and cultivation of the settler, Willson, upon the public lands, whereby he and his wife each became the owner in fee of a designated half of a compact of six hundred and forty acres thereof. This being so, the designation of the partition in the patent may be read and construed in conjunction with that in the certificate. 3 Op. Atty. Gen. U. S. 111. If they are contradictory and irreconcilable, in my judgment, the latter must prevail. The patent cannot lawfully issue, otherwise than in accordance with the certificate. The former is only intended to be an amplification and confirmation of the latter, and if it varies from it in any material particular, it is probably so far void.

For the same reasons, if the description in the certificate should materially vary from

the plat or recorded survey of the donation, the former being based upon the latter and necessarily required to conform to it, the description in the plat would prevail.

Taking then this certificate and patent together and reading them as parts of the same record, it appears first, that the surveyor-general partitioned this donation between the husband and wife by a line running parallel with the south line of the claim, and designated the half north of this line as the part inuring to the latter, and that to the south of it as the part inuring to the former. So far there is no difficulty in the matter. The certificate being deposited in the general land office, and the commissioner, finding no valid objection thereto, caused this patent to issue upon and in confirmation of the same. In describing the parts inuring to the husband and wife respectively, instead of giving the course of the partition line, the patent simply says the south half to William H., and the north half to Chloe A., his wife. It may be admitted that, strictly speaking, there can be but one north half of a donation, and that must be bounded on the south by a line running due east and west. But the patent is not speaking in the abstract, but the concrete, of the halves into which this tract had already been divided by the surveyor-general, as appeared by the certificate from which it was drawn. The patent did not initiate the partition; it only confirmed and recorded one already made. Under the circumstances, therefore, it was natural, proper and convenient that the patent should describe the part inuring to the husband as the south half, meaning thereby the half lying to the south of the partition line described in the certificate. Relatively, the parts of the donation assigned by the patent to the husband and wife are the north and south halves of it. They are the north and south halves, because they are not the east and west ones.

Reading the certificate and patent together, there is no other reasonable or even possible conclusion, but that the partition line is one running parallel with the south line of the claim. The patent is not in conflict with the certificate, but is only obscure where the other is plain. But if this were otherwise, it would not affect the result. Upon both reason and authority, I am satisfied that so far as a patent varies from the certificate, upon which it issues, it is without authority of law and therefore void. A patent can only issue upon a certificate to which no valid objection is found, and therefore must, in the nature of things as well as by the express words of the act, issue in accordance with it. If objection is found to the certificate it cannot be corrected by the patent, but the certificate must be corrected and the patent issue upon it, and in conformity with it. Therefore, there can be no presumption that the commissioner objected to this partition by the surveyor-general, and undertook to correct it by the patent, but the contrary; that he found it without objection, and the patent issued in confirmation of it.

It appearing from the special verdict that the premises in controversy are, upon the part of the donation, assigned to William H. Willson, the defendants must have judgments in bar of the actions and for costs. As to the statement in the special verdict concerning the acquiescence of Willson and wife in the partition line named in the certificate, I have not found it necessary to consider what, if any, effect ought to be given to it.